**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RUSSELL VANBROCKLEN,**

                     **Plaintiff,**

    **v.**

**THE UNITED STATES OF AMERICA,**
**TRANSPORTATION SECURITY**
**ADMINISTRATION,**

                   **Defendant.**
_____

                                                       **1:08-CV-312**
                                                         **(TJM/RFT)**

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

      On March 26, 2009, the Court issued a Decision and Order that granted in part and

denied in part Defendant's Fed. R. Civ. P. 12(b)(6) motion. Dec. & Ord., dkt. # 19.  After

that decision, the sole remaining claim in this action is whether the manner of the search

of Plaintiff in secondary screening was lawful within the context of the Fourth Amendment.

Id. p. 17 ("All claims are dismissed _except_ Plaintiff's Fourth Amendment claim contained in

the original Complaint asserting that the search conducted in secondary screening was

unduly intrusive.").  Thereafter, the Court denied Defendant's motion for reconsideration

(dkt. # 25) and Plaintiff's motion to amend the complaint (dkt. # 29) because an

interlocutory appeal was pending in the United States Court of Appeals for the Second

1

Circuit. Dec. & Ord., dkt. # 32.  Both motions were denied without prejudice to renewal following resolution of the then-pending appeal.  Id.

On September 23, 2009, Plaintiff filed a motion to amend his complaint "to include various State law violations . . . including negligent infliction of emotion distress, . . . negligence, [and] I am looking at others."  Dkt. # 38.  Plaintiff asserted that his appeal had been dismissed. Id.  He did not include a proposed amended complaint with the motion. Id.

On October 5, 2009, the Second Circuit issued a Mandate dismissing Plaintiff's appeal.  Dkt. 39.  On October 16, 2009, Defendant filed opposition to Plaintiff's motion to amend his complaint, and renewed its motion for reconsideration of the Court's March 26, 2009 Decision and Order.  Dkt. # 41.  In the motion for reconsideration, Defendant seeks dismissal of the remaining Fourth Amendment claim.  After being allowed additional time to respond to Defendant's motion, Plaintiff filed his opposition.  Dkt. # 47.

On March 30, 2010, Plaintiff filed a "letter motion" requesting that the Fourth Amendment Claim "be the only claim to move forward," and seeking "a settlement conference" with the magistrate judge on that claim.  Dkt. # 49.

The Court will address the pending motions *seriatim*.

## II.    DISCUSSION

### a.    Plaintiff's Motion to Amend his Complaint

 Given Plaintiff's affirmative abandonment of any claim other than the Fourth Amendment claim that survived the Rule 12(b)(6) motion [dkt. # 49], and in light of Plaintiff's failure to provide a proposed amended complaint setting forth the basis for any

other plausible claim, Plaintiff's motion to amend his complaint [dkt. # 38] is **DENIED**.

> **b.**     **Defendant's Motion for Reconsideration**

Defendant makes several arguments for reconsideration, the central argument of which is that Plaintiff's factual allegations fail to set forth a plausible Fourth Amendment claim.  After careful consideration of the facts and applicable law, the Court agrees.

The remaining claim in this case arises from the events that transpired at the Albany International Airport ("Airport") on September 18, 2007 while Plaintiff was in the "secondary screening" location.   According to Plaintiff, he went to the Airport on this date intending to board a commercial flight to California.  When Plaintiff approached the metal detector at the entrance to the Airport's primary security screening location while seated in a wheelchair,

> a friendly TSA screener John Doe came over [and] put his hands on the Plaintiff[']s shoulder and started [] steering the Plaintiff towards the secondary screening area. The Plaintiff screamed out in extreme pain due to pain in the Plaintiff[']s left [testicle] (which felt worse than a testicular torsion). The Plaintiff also lost control of his hands for several minutes.  The Plaintiff[']s hands curved in and were mostly frozen into a club like state.

Compl. ¶ 12.

On the way to the secondary screening area, Plaintiff verbally requested a private screening location.  Once in the private screening area, "a friendly TSA screener started the pat down procedure on the Plaintiff[']s torso at which time the Plaintiff screamed out in extreme pain." Id. ¶ 15.  The TSA screener stopped the pat down procedure and called a Albany County Deputy Sheriff and a TSA manager to the private screening area.  The Deputy Sheriff "ran the Plaintiff[']s [] driver[']s license and told the friendly TSA agents that the Plaintiff['s] record came back clean." Id. ¶ 18.  "The Plaintiff took off his shirt so the

3

Plaintiff would not have to be touched on his torso again." Id. ¶ 19. A Southwest Airlines manager was also called to the private screening area and, after the manager arrived, "a friendly TSA agent started to pat down the Plaintiff[']s pelvis area." Id. ¶ 21. This caused Plaintiff to scream in "extreme pain," and he "applied his trigger point release device to release his pain." Id. ¶¶ 21-22. Plaintiff told the Southwest Airlines manager that he would not be able to fly that day. He then got up from the wheel chair, walked outside the Airport, and got in a taxi to go to see his doctor. Id. ¶¶ 23-24.

As the Court explained in the March 26, 2009 Decision and Order, the Fourth Amendment allows the government to conduct random, suspicionless, and warrantless searches of passengers and baggage intended to be on commercial airplanes. Dec. & Ord. pp. 9-13. However, the search must be narrowly tailored to serve the ends for which it is intended. Id. p. 14. On this last issue, the Court cited the Ninth Circuit's *en banc* decision in United States v. Aukai, 497 F.3d 955 (9th Cir. 2007), for the proposition that:

> [a]lthough the constitutionality of airport screening searches is not dependent on consent, the scope of such searches is not limitless. A particular airport security screening search is constitutionally reasonable provided that it is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives and that it is confined in good faith to that purpose.

Aukai, 497 F. 3d at 962.

The issue that presents itself now is whether Plaintiff has presented a plausible claim that the search in secondary screening was more extensive or intensive than necessary taking into account the current technology for discovering weapons and explosives. Upon careful consideration, the Court concludes that Plaintiff has not presented a plausible claim in this regard.

4

According to Plaintiff, the TSA screener ceased the pat down procedure of Plaintiff's torso when Plaintiff "screamed out in extreme pain." After calling in a police officer to do a background check on Plaintiff, the TSA screener evidently indicated an intent to continue the search. In response thereto, Plaintiff removed his shirt in an effort to display to the TSA screener that he had no weapons or explosives concealed on his upper torso. There is no indication that the TSA screener continued the pat down search of Plaintiff's upper torso.

However, Plaintiff's action did not reveal whether Plaintiff had weapons or explosives concealed on his lower body. Given the circumstances, including that an objectively reasonable TSA screener may have had a heightened suspicion in light of Plaintiff's response to the first attempts to perform the pat down procedure, it was reasonable for the TSA screener to continue to search for weapons or explosives that might have been concealed by Plaintiff's pants. See Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652-63 (1995)("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" Courts judge the reasonableness of a search "by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."); see also United States v. Hartwell, 436 F.3d 174-176 (3rd Cir. 2006)(secondary screening after passenger alarmed the walk-through metal detector was proper under the administrative search doctrine). Although the use of hand-held metal detectors is common place and, theoretically, could have been used once Plaintiff was in secondary screening to scan for metal weapons instead of the pat down procedure, Plaintiff was seated in a metal wheelchair at the time. A hand-held metal detector may have been ineffective to detect the presence of a metal weapon concealed

on his body in these circumstances.  While Plaintiff asserts that he had intended to walk

through the metal detector at the entrance of the primary screening location, he did not

articulate this intention to the security screeners that directed him to secondary screening.

Therefore, it was objectively reasonable for the TSA screener to conclude that Plaintiff

could not stand for this purpose.

Nevertheless and assuming, *arguendo*, that a hand-held metal detector could have

effectively been employed to detect metal weapons, attempts to use of non-metal

explosives has broadened the scope of reasonable airport searches.  While the use of full

body scanners are employed at some airports, these also require the passenger to stand

between two imaging units that emit either low level x-rays or  electromagnetic waves to

produce an image of the passenger's body.  See TSA Imaging Technology,

http://www.tsa.gov/approach/tech/imaging_technology.shtm (accessed April 5, 2010).  As

indicated above, Plaintiff approached the Airport's walk-through metal detector while

seated in a wheelchair and did not stand or otherwise indicate his ability or intention to

pass through the unit.  Thus, assuming that a full body scanning unit was available at the

Airport, it was not objectively unreasonable for the TSA screener to believe that Plaintiff

could not enter such a scanning unit and, instead, to continue the pat down procedure in

the secondary screening location.[1]

---

[1] Furthermore, the use of the full body scanners would not necessarily have obviated use of the pat down procedure. If a full body scan reveals an anomaly below the clothes, the passenger may  then be subjected to a pat down search to determine whether the object presents a security risk.  See Going Through a Full Body Scan at O'Hare, http://www.chicagotribune.com/travel/chi100315-bodyscan_gfx,0,5476347.graphic (accessed April 5, 2010); How Full-Body Scanners Work, http://www.washingtonpost.com/wp-dyn/content/graphic/2010/01/03/GR2010010302330.html (accessed April 5, 2010).

6

Once the pat down procedure was re-commenced, Plaintiff screamed, stood from his wheelchair, and walked out the Airport.  Plaintiff was neither detained nor forced to endure any continued search procedure that he felt was unreasonable or painful.

Under these circumstances, and given the importance of airport security screening measures, see Hartwell,  436 F.3d at 179  (discussing the importance of, and public interest promoted by, airport screening checkpoints designed to prevent terrorist attacks on airplanes); see also United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001) ("In determining the reasonableness of a search, the intrusion on an individual's privacy interests is balanced against the search's 'promotion of legitimate governmental interests.'"), Plaintiff has failed to assert facts setting forth a plausible claim that the search conducted in secondary screening was unreasonable.  See United States v. Marquez, 410 F.3d 612, 616 (9th Cir. 2005) (An airport screening is reasonable if "(1) it is no more extensive or intensive than necessary, in light of current technology, to detect weapons or explosives; (2) it is confined in good faith to that purpose; and (3) passengers may avoid the search by electing not to fly.")(quotation marks and citations  omitted);[2] see also Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (To survive a Rule 12(b)(6) motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'")(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1974 (2007)).

Accordingly, Plaintiff has failed to assert a plausible claim that his rights under the Fourth Amendment were violated on September 18, 2007.  Defendant's motion for

---

[2]The published decision incorporates amendments contained in a subsequent order in this case. See United States v. Marquez, 2005 WL 1661572 (9th Cir. 2005).

reconsideration is **GRANTED** and Plaintiff's remaining Fourth Amendment claim is

**DISMISSED**.

**III.     CONCLUSION**

For the reasons discussed above,

(1) Plaintiff's motion to amend his complaint [dkt. # 38] is **DENIED**;

(2) Defendant's motion for reconsideration [dkt. # 41] is **GRANTED** and
Plaintiff's remaining Fourth Amendment claim is **DISMISSED;**

(3) Plaintiff's Letter motion dated  March 30, 2010 [dkt. # 49] is **DENIED AS MOOT**.

The Clerk of the Court is instructed to enter Judgment in favor of Defendant, and

close the file in this matter.

**IT IS SO ORDERED**

DATED: April 7, 2010

Thomas J. McAvoy
Senior, U.S. District Judge